**SOUTHERN STEEL CO., Appellant,**

**v.**

**CONSOLIDATED ENGINEERING CO., INC., Appellee.**

**No. 04–81–00330–CV.**

Court of Appeals of Texas, San Antonio.

June 29, 1984.

Rehearing Denied Aug. 16, 1984.

Hubert W. Green, John T. Reynolds, San Antonio, for appellant.

Lawrence A. Beck, Craig L. Austin, San Antonio, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a judgment for breach of a construction contract.

Appellant Southern Steel Company (Southern) won the bid for a contract to provide and install jail equipment in the construction of the Shelby County Justice Center in Memphis, Tennessee. Southern entered into a subcontract with appellee Consolidated Engineering Company, Inc. (Consolidated), whereby Consolidated was to actually erect and install at the job site in Memphis the jail equipment which Southern would manufacture in San Antonio, and ship by truck to Tennessee.

Work began on the project in September of 1978. By December a dispute had arisen concerning delays in shipment by Southern and delays in installation at the job site by Consolidated. By letter dated

January 19, 1979, Consolidated advised Southern as follows:

> You have left us with no choice but to consider you in absolute breach of our SUBCONTRACT AGREEMENT and to advise you that, due to that breach, we cannot and will not continue under the existing arrangement beyond Friday, January 26, 1979. While we would feel justified in an action for our cost overruns and anticipated profits, we prefer to reach some agreement with you that will result in completion of the CENTER as soon as possible.

Several meetings were held between Southern and Consolidated in late January and early February to try to resolve the growing problem. On February 28, 1979, the president of Southern wrote the president of Consolidated a letter containing the following:

> We are both proceeding on this joint course of action to try and get the job done for the owner and demonstrate our attitude of cooperation. By this, you and I agree that we are not changing the contract or otherwise giving up any legal rights.

The letter also provided for reimbursement to Consolidated for adding additional crews to work. For the next three months work progressed on the job, but Consolidated continued to complain of unsatisfactory delivery of materials by Southern. On June 15, 1979, Consolidated shut down the job and quit the job site. Southern then hired United Erectors, an independent corporation owned by the management of Southern, to complete the job.

Southern sued Consolidated for defaulting in the performance of the subcontract. Consolidated filed a counterclaim alleging that Southern had breached the contract. A jury trial ensued.[1] The trial judge, partly on the jury's verdict and partly disregarding it, rendered judgment for Consolidated on its counterclaim in the amount of $362,421.85, and denied all recovery to Southern. Southern brings ten points of error in its appeal; Consolidated urges eight counterpoints and two cross-points.

Appellant's first point of error is that the jury's answer to question number 1 was contrary to the great weight and preponderance of the evidence, and the trial court should have granted appellant's motion for new trial. Question number 1 inquired as to "the reasonable and necessary amount of money expended by Southern to complete the project in question after Consolidated abandoned the job on June 15, 1979." The jury's answer was $508,860.00. Southern had offered evidence that it had paid $1,882,368.00 to United Erectors as direct costs for completion of the erection subcontract. Southern also offered evidence that it was required to pay $11,663.00 to an electric company for work ordered by Consolidated, and it incurred $95,276.00 in interest expense to complete the contract. This allegedly resulted in a total cost to Southern of $1,989,307.00 to complete the project.[2]

■ Appellant has cited no Texas case involving a suit on a construction contract, nor have we been able to find one, where a jury verdict for more than nominal damages was set aside as insufficient. Most of the reported cases are suits involving personal injury with allegations on appeal that the damages are excessive. We have authority under TEX.R.CIV.P. 328 to grant a new trial when the damages are manifestly too small or too large. The weight of authority from other jurisdictions and from leading writers in the field is that the principles underlying the determination of excessiveness in damages are alike in great part to those underlying the determination of inadequacy of damages. Texas cases

---

1. The trial lasted over three weeks, and the record consists of twenty-five volumes.

2. Plaintiff's Exhibit No. 32, United Erectors' Job Cost Ledger is the basis for this testimony. We have not examined Plaintiff's Exhibit No. 32, as it cannot now be located by the District Clerk.

We rely instead on Plaintiff's Exhibit Nos. 33 and 34, which were admitted without objection and which demonstrate mathematically the adjustments added to or subtracted from the total costs as shown on the missing Job Cost Ledger.

generally hold that before a verdict can be said to be excessive, there must be some proof, circumstantial or direct, of bias or prejudice on the part of the jury. Absent such proof an appellate court is required to give every inference to the evidence in favor of the verdict. *Roberts v. Tatum,* 575 S.W.2d 138, 141 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ The appellant points out nothing but the size of the verdict to indicate that the jury applied the wrong measure of damages or acted out of improper bias or prejudice. The correct measure of damages in a suit where a contractor claims that a subcontractor defaulted in the performance of a construction contract is the reasonable and necessary costs of completion over and above the unpaid portion of the contract price. *Freeman v. Shannon Construction Co.,* 560 S.W.2d 732, 735 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). This was the basis for the jury instructions given in the present case. We note that the amount of damages was not a mere matter of computation. The jury was not asked how much had Southern expended to complete the project, but what was the reasonable and necessary amount of money expended. Where the amount of the recovery rests partially or entirely in the discretion of the jury, the propriety of the award must depend on the particular facts involved. The damages here could not be measured mathematically, and considerable discretion and latitude must necessarily have been vested in the jury. *Broesche v. Bullock,* 427 S.W.2d 89, 97 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

> Where there is not a legal measure of damages, and where they are unliquidated, and the amount thereof is referred to the discretion of the jury, the court will not ordinarily interfere with the verdict. It is the peculiar province of the jury to decide such cases under appropriate instructions from the court, and the law does not recognize in the latter the power to substitute its own judgment for that of the jury. Although the verdict may be considerably more or less than in the judgment of the court it ought to have been, still it will decline to interfere unless the amount is so great or small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake.

Southerland on Damages quoted in *Laney v. Hardy,* 265 S.W.2d 609, 609–10 (Tex.Civ. App.—El Paso 1954, no writ).

■ We do not know how the jury arrived at the sum of $508,860.00 in response to question number 1. Southern did not conclusively prove 1.8 million dollars, the amount they contend the jury should have found. Question number 1 correctly states the measure of damages. The jury made a finding that is supported by the evidence. We cannot disturb the finding merely because we might have found a different amount. Appellant's first point of error is overruled.

Appellant next urges several points of error based on the jury's answer to question number 2A. Questions number 2 and 2A and the jury's answers thereto are as follows:

*Question No. 2*

Do you find from a preponderance of the evidence that after the signing of the contract dated August 3, 1977 (plaintiff's exhibit No. 22) Southern substantially failed to cooperate with Consolidated in the fabrication and delivery of the component parts to the project in question?"

Answer "yes" or "no."

We, the jury, answer: "YES."

If you have answered question No. 2 "Yes," and only in that event, then answer the following question.

*Question No. 2A*

Do you find from a preponderance of the evidence that following Southern's substantial failure to cooperate Consolidated thereafter remained on the project and continued to insist upon performance of the subcontract by Southern?

Answer "Yes" or "No."

We, the jury, answer: "YES."

Neither side disputes the support in the evidence warranting the submission of the these issues and the jury's answers thereto. Appellant contests the propriety of the wording of question number 2 because the question allegedly failed to submit the controlling issues of fact which constituted a breach of contract. Southern urges that as a necessary prerequisite to Consolidated's recovery on its counterclaim, Consolidated must prove a material breach of the contract by Southern. *Morgan v. Young*, 203 S.W.2d 837 (Tex.Civ. App.—Beaumont 1947, writ ref'd n.r.e.). Southern further contends that the issue submitted to the jury should have tracked the clause in the contract alleged to have been breached, "The contractor shall cooperate with the subcontractor in scheduling and performing his work to avoid conflicts or interference in the subcontractor's work." Instead, the issue was submitted in language taken from Consolidated's pleadings, "Southern Steel repeatedly and continuously failed to comply with orders and schedules ... as necessary to efficient construction ... refused to fabricate and ship component parts." The difference between Southern's suggested wording ("scheduling and performing his work") and the wording of Special Issue 2 ("fabrication and delivery of the component parts") is insignificant. If the trial court submits the controlling issues made by the pleadings and the evidence, the case should not be reversed because of the failure to submit a different shade of the same issue. *American Transfer & Storage Co. v. Reichley*, 560 S.W.2d 196, 198 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.); TEX.R.CIV.P. 279. Appellant's fifth point of error is overruled.

Appellant also complains of the court's denying it judgment while awarding Consolidated judgment in the face of Issue 2A's finding that Consolidated affirmed the contract after Southern's breach and the undisputed fact that thereafter Consolidated abandoned the job.

Generally, the breach of an agreement by one contracting party excuses performance by the other. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex.1981). But where there has been a breach and the injured party continues his performance, he loses his excuse for non-performance. *H.B. Zachry Co. v. Travelers Indemnity Co.*, 391 F.2d 43, 48 (5th Cir.1968). Any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach, but depriving him of any excuse for his ceasing performance. *The Board of Regents of the University of Texas v. S & G Construction Co.*, 529 S.W.2d 90, 97 (Tex.Civ.App.— Austin 1975, writ ref'd n.r.e.). The contract continues in force for the benefit of both parties. *Houston Belt & Terminal Railway Co. v. Weingarten, Inc.*, 421 S.W.2d 431, 435 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.).

By sending the letter January 19, 1979, declaring a breach and subsequently performing under the contract until abandoning the job on June 15th, Consolidated could not rely on Southern's prior breach as an excuse for leaving the job. Unless Consolidated could offer other justifications, when it walked off the job, it was an unexcused breach for which Southern was then entitled to recover. *See Mandril v. Kasishke*, 620 S.W.2d 238, 245 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.). In the absence of such excuse, the trial court should not have disregarded the jury's answer to special issue 2A. *Frost National Bank v. Nicholas & Barrera*, 534 S.W.2d 927, 932 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). The trial court should have awarded judgment to Southern based on the jury's answers to questions 1 and 2A unless there was another finding excusing Consolidated. Since it was undisputed factually that Consolidated abandoned the job, it was not necessary for the jury to so find in a special issue. TEX.R.CIV.P. 277 and 279; *Wright v. Vernon Compress Co.*, 156 Tex. 474, 296 S.W.2d 517, 523 (1956); *Hughett v. Dwyre*, 624 S.W.2d 401, 403 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.).

Appellant Southern further contends that Consolidated should be barred from recovery on its counterclaim because it abandoned the work after having elected to affirm the contract. Consolidated counterclaimed for both (1) cost overruns incurred in the work done because of Southern's failure to cooperate; and (2) loss of anticipated profits if it had been able to complete the entire job. The trial court granted judgment to Consolidated for losses resulting from additional costs incurred in the performance of the work. The trial court declined to give judgment to Consolidated for lost profits even though the jury made a substantial finding on that issue.

Southern urges the broad contract principle that one who has himself broken a contract cannot recover on it. *Halbert v. Standley*, 488 S.W.2d 887, 889 (Tex.Civ. App.—Waco 1972, writ ref'd n.r.e.). Southern, of course, intends the principle to bar recovery by Consolidated and not bar recovery by Southern, though breach by both parties is clear. Cases occur where both sides violate a contract, and each is liable in damages to the other. *See, e.g. Beeman v. Worrell*, 612 S.W.2d 953, 956–57 (Tex.Civ.

App.—Dallas 1981, no writ); *Sitlington v. Fulton*, 281 F.2d 552 (10th Cir.1960).

Corbin describes principles applicable to a situation like the one here. If one party to a bilateral contract commits a partial breach (namely, a breach not so material as to discharge the other party's duty of performance or a breach that is so treated at the election of the other party), the other party's only remedy is damage for the partial breach. The other party's subsequent nonperformance will in turn be a breach of the contract by him for which the first party will in his turn have an appropriate remedy. If the other party's breach is total and substantial, the first party can maintain an action for full damages. But in such an action, the first party will be subject to the other party's counterclaim for the first party's earlier partial breach. 6 A. Corbin, *Corbin on Contracts* § 1253, at 13; § 946 n. 8 (1962).

Southern was entitled to damages for cost of completion unless Consolidated had an excuse for leaving the job other than Southern's breach that occurred prior to the affirmance of the contract by Consolidated. Consolidated looks to the jury finding of "prevention of completion" [3] as

---

**3.** The remaining special issues and their answers after issues 1, 2 and 2A are as follows:

If you have answered question No. 2 "yes," and only in that event, then answer the following question.

*Question No. 3*

Do you find from a preponderance of the evidence that such substantial failure to cooperate prevented Consolidated from performing the remainder of its subcontract to completion?

Answer: "Yes" or "No."

We, the Jury, answer: <u>Yes.</u>

If you have answered question No. 2 "Yes," and only in that event, then answer the following question.

*Question No. 4*

Find, from a preponderance of the evidence, what portion of the loss sustained by Consolidated prior to June 15, 1979, when it abandoned the project, resulted solely from the failure of Southern to substantially cooperate in the fabrication and delivery of component parts to the job site.

Answer by stating the amount in dollars and cents or "None."

We, the Jury, answer: <u>$345,998.00.</u>

Do not include in your estimate any amount for any claim which has been made by Consolidated and paid by Southern. You are further instructed that the term "loss" means the reasonable and necessary additional cost, if any, incurred in the performance of the work and not contemplated in the contract.

If you have answered question No. 2 "Yes," and only in that event, then answer the following question.

*Question No. 5*

Do you find from a preponderance of the evidence that Consolidated would have realized a profit had it completed the project but for the sole failure of Southern to cooperate in the fabrication and delivery of component parts on the job site?

Answer "Yes" or "No."

We, the Jury, answer: <u>Yes.</u>

You are instructed that the profit is measured by the difference between the contract price and what it would have cost Consolidated to fully perform the contract in accordance with its provisions and the plans and specifications.

If you have answered question No. 5 "Yes," and only in that event, then answer the following question.

its excuse for leaving. Consolidated also contends that this finding entitled it to recover on the contract for loss of profits. Consolidated contends that the trial court should not have disregarded the jury's findings (questions 5 and 6) on loss of profits. Where a contractor is prevented from completing the work after partial performance, where he is justified in abandoning further performance because of a breach by the other party to the contract, he may recover damages in addition to compensation for the work already done. The damages may include the profits that he would have made had he been permitted to perform. *Delhi Pipeline Corp. v. Lewis, Inc.*, 408 S.W.2d 295, 299 (Tex.Civ.App.—Corpus Christi 1966, no writ), *overruled on other grounds, Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814, 821 (Tex.1970). Since recovery for lost profits is a recovery on the contract, Consolidated would have to show that it was not in unexcused breach of the contract in order to recover for the lost profits. It being undisputed that Consolidated walked off the job (a material breach), whether Consolidated's conduct was excusable is a controlling issue in this lawsuit.

■ However, the wording of the questions submitted to the jury clouded the issue of whether or not Consolidated had an excuse. Issue number two asked if Southern failed to cooperate, and the jury answered it "yes." Issue number three asked did such failure to cooperate prevent completion, and the jury answered "yes." These findings would have supplied Consolidated with the necessary excuse for abandoning the job had it not been for the jury finding on question 2A. The finding in 2A was that, following Southern's failure to cooperate, Consolidated remained on the job and insisted that the contract be performed. This 2A finding is tantamount to a finding that Southern's failure to cooper-

ate up to January 1979 did not prevent Consolidated from completion because in January 1979 Consolidated elected to affirm the contract in spite of Southern's prior failures. But the inserting of Issue 2A between issues 2 and 3 had a further effect. Any answer to 2A and 3 was conditioned on a "yes" answer to 2, "Did Southern fail to cooperate?" The effect of 2A was to limit the reference for question 3's phrase "such substantial failure to cooperate." The "failure" described in 2A was Southern's failure to cooperate after which Consolidated insisted on performance, i.e., Southern's pre-affirmance breach. Thus the words "such substantial failure" in question 3 must be read as referring to the same "failure" as described in 2A, i.e., Southern's pre-affirmance breach. Therefore, Issue 3 actually reads as follows: "Do you find from a preponderance of the evidence that [Southern's pre-affirmance breach] prevented Consolidated from performing the remainder of its subcontract to completion?" The evidence does not support a finding that Southern's conduct before the declared breach in January forced Consolidated's abandonment the following June.

■ In its brief, Consolidated contends it ultimately left the job because of Southern's failure to cooperate after the letter of January 19th, and the subsequent agreements to keep trying to get the job done. There is no jury finding on this later alleged failure to cooperate. Since Consolidated was the party relying upon this fact issue, it was required to request a special issue of the court. *Davis Bumper to Bumper v. American Petrofina Co. of Texas*, 420 S.W.2d 145, 150 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). Consolidated did, in fact, object to the submission of issue number 2A and requested that if it were submitted, it be followed by question number 2B, "If you have answered number

Question No. 6
What amount of money, if any, do you find from a preponderance of the evidence would *Consolidated have made as a profit at the* time had they completed the project in question?

Answer the amount in dollars and cents, if any, or "None."
We, the Jury, answer: $215,575.00.

2A 'yes,' do you find from a preponderance of the evidence that Consolidated remained on the project in consideration of Southern's representations that it would thereafter fabricate and deliver component parts in accordance with the mutually agreed delivery schedule," and further as question number 2C, "If you have answered question number 2B 'yes,' do you find from a preponderance of the evidence that Southern failed thereafter to fabricate and deliver component parts in accordance with such mutually agreed delivery schedule." The trial court refused to submit these issues even though they were requested in substantially correct form. TEX.R.CIV.P. 279.

■■■■■ On appeal there is a rebuttable presumption that omitted issues were established as a matter of law or that there was no evidence to raise them. *Campise v. Peden Builders Hardware Co.*, 452 S.W.2d 61, 63 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); *Dublin v. Hicks*, 120 S.W.2d 872, 873 (Tex.Civ.App.—Eastland 1938, no writ). But in this case, we cannot so presume. Between the time of the declared breach (January 19, 1979), and the time Consolidated abandoned the job (June 15, 1979), Consolidated did much more than just allow additional time to see if Southern would conform. There were adjustments made to the shipping schedule, and Consolidated agreed to put a second shift on the job. Whatever happened leading up to Consolidated's abandoning the job, it could not be held as a matter of law to have been a continuing breach of the conduct five to six months previous. There was evidence to raise a fact issue for the jury as to any justification for abandonment of the contract by Consolidated. The issues were requested in substantially correct form and were raised by the evidence. TEX.R. CIV.P. 277, 279. The trial court should have submitted the requested issues.

We conclude that the jury finding as to prevention (issue number 3) related to a pre-affirmance breach by Southern. In the absence of a finding as to a post-affirmance breach by Southern, we are unable to determine if Consolidated is entitled to recover for lost profits. In the absence of a finding by the jury of no post-affirmance breach by Southern, we are unable to determine if Southern is entitled to recover its expenses for completion of the job. To ascertain that matter of fact, it is necessary that the cause be remanded for a new trial. There is no part of the matter in controversy that is clearly separable without unfairness to the parties.

All points of error insofar as they are in harmony with the disposition which we make of this cause are sustained; in all other respects they are overruled.

