CONSOLIDATED ENGINEERING
COMPANY, INC., Petitioner,

v.

SOUTHERN STEEL
COMPANY, Respondent.

No. C–3433.

Supreme Court of Texas.

June 19, 1985.

Rehearing Denied Sept. 17, 1985.

Green and Kaufman, Hubert W. Green and Robert W. Loree, San Antonio, for respondent.

Craig L. Austin, San Antonio, Charles J. Williams, Nashville, Tenn., for petitioner.

GONZALEZ, Justice.

This is a suit for damages for breach of contract. The primary issue on appeal is whether the court of appeals properly interpreted the jury answers to certain special issues.

Southern Steel Company sued Consolidated Engineering Company, Inc. for damages due to alleged defaults on several construction contracts. Consolidated filed a counterclaim for damages alleging that Southern had itself breached the contracts. The trial court rendered judgment for Consolidated on its counterclaim and denied all recovery sought by Southern. Both parties appealed. The court of appeals reversed and remanded the cause to the trial court for a new trial. 677 S.W.2d 97. We reverse the judgment of the court of appeals and reform the judgment of the trial court to include attorney's fees. As reformed, the judgment of the trial court is affirmed.

## FACTS

Southern is a Texas corporation which manufactures jail facilities. Consolidated is a Tennessee corporation whose principle business is erecting steel materials and equipment. Between 1975 and 1978, Southern and Consolidated entered into twelve contracts in Texas which provided that Consolidated was to erect and install detention equipment provided by Southern in several states. One of these projects was the Shelby County Justice Center in Memphis, Tennessee. Since storage facilities were unavailable at the jobsite, Southern agreed to ship the prefabricated parts to the jobsite in a timely and orderly manner. Southern further agreed to pay Consolidated $1,014,950 for its work.

After the parties commenced performance under the contract, a dispute arose concerning Southern's delays in shipping the materials and Consolidated's resulting delays in installation. Consolidated expressed its dissatisfaction in a letter dated January 19, 1979, which advised Southern that:

> You have left us with no choice but to consider you in absolute breach of our SUBCONTRACT AGREEMENT and to advise you that, due to that breach, we cannot and will not continue under the existing arrangement beyond Friday, January 26, 1979. While we would feel justified in an action for our cost overruns and anticipated profits, we prefer to reach some agreement with you that will result in completion of the CENTER as soon as possible.

Thereafter, representatives of Southern and Consolidated met several times in an attempt to resolve the problem. On February 28, 1979, the president of Southern wrote the president of Consolidated a letter in which he stated:

[w]e are both proceeding on this joint course of action to try and get the job done for the owner and demonstrate our attitude of cooperation. By this, you and I agree that *we are not changing the contract or otherwise giving up any legal rights.* (Emphasis added.)

The letter also provided that Consolidated was to be reimbursed for additional work crews it had been forced to hire as a result of Southern's failure to deliver the materials as scheduled.

Consolidated remained on the job for the next three months. However, it continued to complain of unsatisfactory delivery of materials. Consolidated finally quit on June 15, 1979, and Southern hired another company to complete the job.

Southern brought suit in Texas against Consolidated alleging that Consolidated had breached several of the contracts. It sought $1,585,571 in damages as costs to complete the Shelby project, plus attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2226. Consolidated filed a counterclaim alleging that Southern had breached the contract by not delivering the component parts in sequence. Consolidated alleged that it was forced to abandon the project in order to mitigate its damages. It prayed for damages amounting to its cost overruns, lost profits and attorney's fees.

Prior to the trial, the parties stipulated that they had settled all claims except the Shelby project, and that Southern owed Consolidated $26,000 on the other jobs. The jury answered the special issues as follows:

1. The "reasonable and necessary" amount expended by Southern to complete the project was $508,860.
2. Southern failed to cooperate in the fabrication and delivery of the parts.
2a. Following Southern's failure to cooperate, Consolidated remained on the

project and insisted on Southern's performance.
3. Such failure of cooperation prevented Consolidated from performing the contract to completion.
4. The amount of loss sustained by Consolidated prior to 6/15/79 which resulted solely from Southern's failure to cooperate was $345,998.
5. Consolidated would have realized a profit but for Southern's failure to cooperate.
6. Consolidated would have made $215,575 in profit had it completed the project.

The parties agreed that the issue of attorney's fees would be tried to the court. The trial court found that the prevailing party would be entitled to attorney's fees in the following amounts: $75,000 in the trial court, $5,000 in the court of appeals, and $2,500 in the supreme court.

The trial court disregarded the jury's answers to issues 2a, 5 and 6, granted Consolidated judgment for damages in the amount of $362,421,[1] denied attorney's fees, and rendered a take nothing judgment as to Southern.

On appeal, the court of appeals held that the jury's finding in issue 2a deprived Consolidated of an excuse for abandoning the contract. The court of appeals stated that Consolidated could not use Southern's prior breach as an excuse for nonperformance because Consolidated had elected to affirm the contract and continue performance even after declaring a breach in its letter of January 19, 1979. The court of appeals held that the entire cause had to be remanded for new trial because, in its opinion, there was no jury finding that Southern breached the contract subsequent to Consolidated's affirmance.[2]

---

1. $345,998 —Jury finding—issue 4
   (45,000)—Consolidated remitted damages found
   in issue 4 over the amount pleaded
   26,000 —Settlement stipulation
   35,423 —Prejudgment interest
   $362,421 —Judgment

2. The court of appeals reversed and remanded based in part upon its view that two other issues that had been tendered by Consolidated in response to Southern's issue 2a should have been submitted to the jury. However, these proposed issues were not requested in *writing* and tendered to the court as required by Tex.R.Civ.P. 279.

Both sides have appealed to this court. Southern asserts that the court of appeals erred in failing to render judgment that Consolidated take nothing on its counterclaim and in failing to render judgment for Southern in the net sum of $18,359.[3] Southern attacks the lack of a jury finding of "excuse" for Consolidated's abandonment of the contract. In the alternative, Southern contends that there is no evidence to support the jury's answers to issues 3 and 4. Consolidated alleges that the court of appeals erred in reversing the case and that the trial court erred in failing to award lost profits and attorney's fees.

## SOUTHERN'S CLAIM

■ Southern contends that Consolidated breached the contract by unjustifiably refusing to complete its performance. Essential to Southern's claim is a finding that Consolidated did in fact breach the contract. By its answer to issue 1, the jury found that Southern expended $508,860 to complete the project after Consolidated abandoned it. This finding does not establish that Consolidated committed a breach or that Southern was damaged as a result of such breach. Because Southern did not request proper issues and obtain affirmative findings necessary to sustain its ground of recovery, the trial court was correct in rendering a take-nothing judgment as to Southern.

## CONSOLIDATED'S CLAIM

■ In order for Consolidated to prevail, it too had to prove breach of contract. The jury found in issue 2 that Southern had "substantially failed to cooperate with Consolidated in the fabrication and delivery of the component parts to the project" and in issue 3 that Southern's failure to cooperate "prevented Consolidated from performing the remainder of its subcontract to completion." Either of these findings establishes breach of contract. In issue 4, the jury further found that Consolidated lost $345,-998 prior to abandoning the project *solely* as a result of Southern's failure "to substantially cooperate in the fabrication and delivery of component parts to the job site." Having obtained a favorable jury verdict on these issues, Consolidated is entitled to recover.

The confusion in this case stems from issue 2a, by which the jury found that Consolidated remained on the job and continued to insist that Southern perform subsequent to Southern's substantial failure to cooperate.[4] Both Southern and the court of appeals assume that the jury's response to this issue constitutes a finding that Consolidated affirmed the subcontract. We disagree.

■ A party may affirm a contract that has been breached in one of two ways: (1) by evidencing a conscious intent to do so; or (2) by acting so as to induce the other party's detrimental reliance, thereby creating an estoppel situation. *See Texas Associates, Inc. v. Joe Bland Const. Co.,* 222 S.W.2d 413, 420 (Tex.Civ.App. Austin 1949, writ ref'd n.r.e.). Issue 2a of the contract does not constitute a finding that Consolidated affirmed the contract. It establishes neither waiver nor estoppel. Rather, this issue inquires about evidentiary facts that were uncontroverted throughout the trial.

The written correspondence between the parties reveals that, despite their mutual endeavor to continue performance, they intended to preserve all of their legal rights. Moreover, we cannot in equity hold that Consolidated should be estopped from asserting its legal rights simply because it gave Southern another opportunity to com-

---

3. $508,860—Cost to complete as per jury finding
   490,501—Contract balance not paid to Consolidated
   $ 18,359

4. *Question No. 2a:* Do you find from a preponderance of the evidence that following SOUTHERN'S substantial failure to cooperate, CONSOLIDATED thereafter remained on the project and continued to insist upon performance of the subcontract by Southern? Answer "Yes" or "No."
   We, the jury, answer: *Yes.*

ply with the subcontract. Thus, the trial court correctly disregarded issue number 2a.

## LOST PROFITS

The trial court refused to award Consolidated the amount of profits found by the jury to have been lost as a result of Southern's failure to cooperate. Consolidated complained of this omission in a cross point before the court of appeals. Southern contends that the point was nonetheless waived. We disagree.

Two issues pertain to lost profits. These issues and the jury answers thereto are as follows:

*Question No. 5*

Do you find from a preponderance of the evidence that Consolidated would have realized a profit had it completed the project but for the sole failure of Southern to cooperate in the fabrication and delivery of component parts on the job site?

Answer "Yes" or "No."

We, the jury, answer: Yes.

You are instructed that the profit is measured by the difference between the contract price and what it would have cost Consolidated to fully perform the contract in accordance with its provisions and the plans and specifications.

If you have answered question No. 5 "Yes," and only in that event, then answer the following question.

*Question No. 6*

What amount of money, if any, do you find from a preponderance of the evidence would Consolidated have made as a profit at the time they had completed the project in question?

Answer the amount in dollars and cents, if any, or "None."

We, the jury, answer: $215,575.00

■ In both its brief and its motion for rehearing before the court of appeals, Consolidated phrased its cross point regarding lost profits as follows: "The trial court erred in disregarding the jury's answer to question number 5 because ...." Southern's response to this point was that any error in disregarding the answer to question number 5 was immaterial because Consolidated failed to complain of the trial court's disregard of question number 6. Southern maintains that Consolidated's failure to complain specifically of the trial court's disregard of issue 6 is a concession that the trial court's action was correct.

We hold that the lost profits issue was adequately preserved. Issue 6 is conditional on an affirmative answer to issue 5. Issues 5 and 6 are so inextricably entwined that one cannot be mentioned without automatically directing attention to the other. Consolidated's crosspoint sufficiently directs the court's attention to the error relied upon. Tex.R.Civ.P. 418, 422.

■ We therefore hold that Consolidated did adequately preserve its error regarding the trial court's failure to award lost profits as per the jury verdict. However, because there is no evidence that would support the jury finding on this issue, we affirm the trial court judgment as to lost profits.

## ATTORNEY'S FEES

Consolidated maintains that it was entitled to recover its attorney's fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226. We agree.

Southern relies upon its original contract with Shelby County, Tennessee for the proposition that both the subcontract and the original contract were governed by the law of Tennessee, the state where the jobsite was located. Since the law of Tennessee precludes recovery of attorney's fees in a suit of this type, Southern urges this court to reject Consolidated's claim.

■ The contract entered into by Southern and Consolidated does not contain a choice of law provision. After reviewing the subcontract provisions and after considering the actions of the parties, we conclude that the parties did not necessarily intend for Tennessee law to control in the event a dispute arose. The provision Southern relies upon in an effort to establish the applicability of Tennessee law is at best, ambiguous. Conduct of the parties

which indicates the construction that the parties themselves placed on the contract may therefore be considered in determining the parties' true intent. *Danaho Refining Company v. Dietz*, 398 S.W.2d 307, 311 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

 In this case, Southern chose to bring suit in Texas but did not suggest that Tennessee law was controlling until after the jury returned a verdict for Consolidated. Furthermore, Southern alleged in its pleadings that it was entitled to recover attorney's fees under Texas law. Southern may not now change its position. We therefore hold that Consolidated is entitled to recover attorney's fees as determined by the trial court.

We reverse the judgment of the court of appeals and reform the judgment of the trial court to include an award of attorney's fees. As reformed, the trial court's judgment is affirmed.