James W. TOREN and Wilmington Trust Company, as Trustees of the BRNF Liquidating Trust, Plaintiffs–Appellants,

v.

BRANIFF, INC., and Dalfort Corporation, Defendants–Appellees.

No. 88–7045.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1990.

---

**20.** Fed.R.Civ.P. 52(a); *Sebree v. United States,* 567 F.2d 292, 294 (5th Cir.1978); *Pittman v.* *Gilmore,* 556 F.2d 1259, 1261 (5th Cir.1977).

Stephen E. Herrmann, Richards, Layton & Finger, Nathan B. Ploener, Wilmington, Del., J. Lyndell Kirkley and John W. Proctor, Brown, Herman, Scott, Dean & Miles, Ft. Worth, Tex., for plaintiffs-appellants.

Wesley N. Harris and E. Glen Johnson, Ft. Worth, Tex., for Braniff, Inc. and Dalfort Corp.

Before GARZA, REAVLEY and POLITZ, Circuit Judges.

GARZA, Circuit Judge:

James W. Toren and Wilmington Trust Co. (collectively "Toren"), trustees for the trust liquidating now-bankrupt Braniff Airways, Inc. ("Airways"), sued Braniff, Inc. ("Braniff") and Dalfort Corp. ("Dalfort"), successors to Airways, alleging breach of a lease agreement and unjust enrichment. The district court entered judgement, based on a jury verdict, for Braniff and Dalfort. Toren now appeals, complaining that the district court erred in construction and en-

forcement of the lease agreement. We AFFIRM the judgment of the district court.

In May of 1982, Airways filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and in connection with that filing, submitted a Plan of reorganization. Under that Plan, Airways changed its name to Dalfort and created a subsidiary named Braniff, which was controlled but not wholly owned by Dalfort. For the benefit of the secured creditors of Airways, the Plan created the BRNF Liquidating Trust ("BRNF"), and Toren was named trustee. The Plan transferred assets of Airways to BRNF, which then leased them to Braniff (the "Lease").[1] Braniff continued to operate as an airline under the Plan, and Dalfort did all of Braniff's maintenance work.

Pursuant to the Lease, Braniff returned ten aircraft to BRNF in 1985, but did not then return rotable parts also included in the Lease. Instead, Braniff kept the rotables and exchanged them, through formal and informal loan agreements, with other airlines. It is industry custom for one airline to exchange rotables with others, as no airline can maintain a full stock of rotables at each airport it services.

Toren sued Braniff in Federal court, alleging that the rotable loan agreements Braniff had with other airlines were prohibited by the Lease, and that Braniff was unjustly enriched by those loans. The Lease provided that Texas law should control its interpretation. The district court found that the Lease was ambiguous, submitted it to a jury for interpretation, and entered judgment in Braniff's favor based on that jury verdict. Toren now appeals the judgment, complaining that the district court erred in finding the Lease was ambiguous, and in submitting the Lease to the jury for interpretation. Also, Toren complains that Braniff should be charged for Toren's attorney's fees.

**Ambiguity of the Lease**

■ The preliminary question of whether a contract is ambiguous is one of law. *Carpenters Amended and Restated Health Benefit Fund v. Holleman Construction Co., Inc.*, 751 F.2d 763, 767 (5th Cir.1985). In answering that question, the court should consider the intent of the parties as evidenced by the terms of the contract and industry custom. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). But once a court has found ambiguity in a contract, "the interpretation of the instrument is a question of fact for the jury." *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). In this case, the district court found that the lease was ambiguous as to whether Braniff's loans of rotables were prohibited. Therefore, the court submitted the Lease to the jury for interpretation. Toren complains that the district court erred in failing to find that the Lease prohibited Braniff's lending of rotables as a matter of law. Toren contends that sections 6 and 20(b) of the Lease unambiguously prohibit the loans, and, since determination of whether a contract is ambiguous is a question of law, the district court should not have found ambiguity or submitted the Lease to the jury for interpretation.

1. Section Six [2]

■ In support of its argument, Toren takes two words from Section 6—"encumbrance" and "claim"—out of context, and argues that those words unambiguously prohibit Braniff from lending rotables. But Toren ignores the list of words which falls before the chosen two. The specific items listed (security interest, mortgage, pledge, lien, charge) refer to financing agreements in which the lender takes a non-possessory interest in property as security for an indebtedness. While "encumbrance" and "claim" are less clearly defined, in Texas, "[w]here there is a list of

---

**1.** The assets included thirty Boeing 727–200 aircraft, aircraft engines and certain aircraft parts. The parts included "rotables," which are parts *rotated on and off an aircraft for repair*, as opposed to "expendables," which are used and then discarded.

**2.** Section 6 provides, in pertinent part: "Mortgages, Liens, etc. Lessee will not, directly or indirectly, create, incur, assume, or suffer to exist any *security interest, mortgage, pledge, lien, charge, encumbrance, or claim* on or with respect to the Leased Property...."

certain specific items, followed by general words, the general words are held to refer to the same class of items as those items specifically mentioned." *Haney v. Minnesota Mutual Life Ins. Co.*, 505 S.W.2d 325, 328 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). Given this construction of "encumbrance" and "claim," it is ambiguous whether Section 6 was intended to prohibit the lending of rotables.

Industry custom, too, shows that the parties to the Lease did not intend specifically to prohibit the lending of rotables. The Lease itself reflects that the parties contracted with reference to industry custom and usage.[3] And the testimony of expert witnesses Joe Dooley, Fred Maurstad, and Charles Thornton explained clearly that lending of rotables among airlines is industry custom. Given the language of the Lease itself, and its construction in light of industry custom, we affirm the district court's finding of ambiguity and submission of the Lease to the jury for interpretation.

### 2. Section Twenty [4]

■ Toren complains that the district court should have found that Section 20(b) of the Lease prohibited the lending of rotables as a matter of law, and therefore submission of the Lease for interpretation by the jury was error. This contention must fail, for several reasons. First, Section 20(a) of the Lease governs assignment by Toren, the Lessor. Where Section 20(b) addresses assignment of the "Lease and all or any part of [Braniff's] rights," Section 20(a) addresses assignment of the "Lease, the *Leased Property* and all or any part of [Toren's] rights" (emphasis added).[5] The parties specifically addressed assignment

of the leased *property* by Toren, but did not do so for Braniff. We cannot say, therefore, that Section 20(b) unambiguously addresses and prohibits Braniff's lending of the leased property.

■ Second, even if Section 20(b) did address assignment of the leased property by Braniff, it is not clear whether Braniff's lending of rotables falls within Section 20(b)'s prohibitions. That is, whether Braniff's loan agreements constitute assignments, transfers, or conveyances as those terms are used in Section 20(b). Because Section 20(b) does not unambiguously prohibit Braniff's lending of rotables, the district court did not err in submitting the lease to the jury for interpretation, and we affirm the district court's judgment based on the jury's findings.

### Return of Rotables

■ Section 3(a)(vii) of the Lease provides that Braniff should return to Toren any rotables that "are surplus to [Braniff's] needs, as determined in good faith by [Braniff]." The district court submitted an interrogatory to the jury on the issue [6], and the jury found that Braniff had made a good faith determination of which rotables were surplus to its needs. Toren complains now that the district court should have found that the rotables lent to other airlines were surplus as a matter of law, and the issue of good faith should not have submitted the issue to the jury for determination. Toren argues that, because Braniff had loan agreements with other airlines, specifically Alaska Airlines, the rotables lent were, by necessity, surplus to Braniff's needs.

At trial, the jury heard testimony from Joe Dooley, an expert in the airline indus-

---

3. Sections 1(v), 1(x), 1(bb), 8(i) and 11 of the Lease provide specifically that Lease enforcement and construction should reflect industry standards.

4. Section 20(b) provides, in pertinent part:
   "This lease and all or any part of Lessee's rights hereunder shall not be assigned, transferred, or otherwise conveyed by Lessee without the express written consent of the Lessor."

5. The term "leased property" is specifically defined in Section 1(y) of the Lease to include

"Airframes, the Engines, and the Rotables, including all manuals, logs and records relating thereto...."

6. The interrogatory read:
   "Do you find from a preponderance of the evidence that Braniff failed to make a determination in good faith as to which rotables, if any, were surplus to its needs when it returned aircraft to the trust."

try. He testified that because Braniff at the time of the transactions was not yet a stable concern, their needs were uncertain, but they had retained only those rotables that were foreseeable and necessary for their operations. In fact, Mr. Dooley testified that he would have retained more rotables than Braniff did. Given this and other testimony, we cannot say that Braniff retained excess rotables as a matter of law. The district court, therefore, correctly submitted the issue to the jury for determination. We affirm the judgment of the district court reflecting the jury's finding of good faith.

Other Theories of Recovery

Toren complains that, because Braniff's lending of rotables was unlawful, Toren is entitled to recover for unjust enrichment, conversion, and Braniff should be subject to a constructive trust for Toren's benefit. But these claims presuppose the unlawfulness of Braniff's loan agreements. And, as those agreements have been found to be lawful, we find no merit in Toren's contentions.

Attorneys' Fees

■ Section 22 of the Lease provides that Braniff shall indemnify Toren for "reasonable attorneys' fees" incurred in enforcing a right under the Lease. As a consequence, the district court allowed testimony as to the legal services rendered and their value. The jury was correctly instructed as to the factors to consider in determining attorneys' fees, and given an interrogatory to answer. They found that the reasonable value of Toren's attorneys' fees was zero. Toren now argues that we should set aside that factual determination and order a new trial, simply because the jury did not follow their recommendation in setting reasonable value. We decline to do so, as the Lease merely entitles Toren to *reasonable* fees, not *actual* fees, or *all* fees, or fees testified to at trial. The jury's determination of reasonable fees will stand.

Waiver

The district court submitted an interrogatory to the jury on the affirmative defense of waiver, and the jury answered in Bran-

iff's favor. Toren now complains that the interrogatory was not supported by the evidence since Braniff presented no evidence of a *written* waiver, as would be required by the Lease. Because the jury found that the Lease itself allowed Braniff's loan transactions, Toren need not have waived any rights under the Lease to allow the transactions. Therefore, we do not reach Toren's complaint on this issue.

For this reason and those stated above, the judgment of the district court is in all things AFFIRMED.

REAVLEY, Circuit Judge, concurring:

I concur in the judgment. I see no factual ambiguity. Under prevailing industry custom and the terms of the lease, Braniff was entitled to exchange rotables with other airlines.