**COMMUNICATIONS TRANSMISSION, INC.,**

v.

**TRISTAR COMMUNICATIONS, INC.**

Civ. No. A–91–CA–053 JN.

United States District Court,
W.D. Texas,
Austin Division.

Sept. 4, 1992.

Paul J. Van Osselaer, Hughes & Luce, Austin, Tex., for plaintiff.

Bobby Gene Pryor, Gibson, Dunn & Crutcher, Dallas, Tex., for defendant.

## ORDER

NOWLIN, District Judge.

Before the Court is Plaintiff Communications Transmission's Motion For Summary Judgment, filed February 7, 1992. Having reviewed and considered this motion and the applicable responsive pleadings and exhibits, this Court is of the opinion that this motion should be DENIED.

In this action the dispute centers upon the meaning and interpretation of a clause in the letter agreement entered into between Plaintiff CTI and Defendant TriStar. The particular clause states:

> TriStar may cancel service, at any time, should quality of service or transmission become unacceptable (based on TriStar's sole and exclusive determination). Tri-Star will notify CTI of the reason for dissatisfaction. In the event CTI should fail to resolve that quality or service condition which has been found to be unacceptable, within such time and to such an extent that TriStar deems acceptable, TriStar hereby reserves the right (and CTI agrees) to cancel any further obligations on the part of either TriStar or CTI. Following this, all claims by CTI or TriStar shall cease, saving any current amounts shown to be due or past due prior to the notice of quality or service dissatisfaction.

*See,* Letter of Agreement, January 27, 1989, at page two.

In this action, some general principles of contract law are applicable. The question of whether a contract is ambiguous is one of law. *See Toren v. Braniff, Inc.,* 893 F.2d 763, 765 (5th Cir.1990) (citation omitted). "Whether a written agreement is ambiguous or whether it clearly demonstrates the intent of the parties is a question of law." *Shelton v. Exxon Corp.,* 921 F.2d 595, 602 (5th Cir.1991) (citation omitted). To decide a dispute over ambiguity, the court should consider the intent of the parties as evidenced by the terms of the contract and industry custom. *Toren,* 893 F.2d at 763 (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). If the court determines that a contract provision is ambiguous, then the dispute over the meaning becomes a question of fact. *Id.* (citing *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987)). However, the interpretation of an unambiguous contract is a question of law. *Shelton,* 921 F.2d at 603 (citation omitted). Unambiguous language in a contract should be enforced as written, and the applicable standard is the objective intent, not subjective intent. *Id.* (citations omitted).

The courts must examine the *entire* written agreement to harmonize and effectuate *all of the provisions,* so that none of the provisions will be rendered meaningless. *See Chapman v. Orange Rice Milling Co.,* 747 F.2d 981, 983 (5th Cir.1984) (emphasis in original) (citing *Coker,* 650 S.W.2d at 393). The presumption is that the contracting parties intend every clause to have effect, unless the clauses are irreconcilable or repugnant. *Id.; see also Westwind Exploration v. Homestate Savings Ass'n,* 696 S.W.2d 378, 382 (Tex. 1985). A reasonable interpretation of the agreement will be preferred to an unreasonable one. *Westwind Exploration,* 696 S.W.2d at 382.

When an agreement does not contain a specific or technical definition of certain terms used therein, those terms should be given their plain, ordinary, and generally accepted meanings. *See Gonzalez v. Mission American Insur. Co.,* 795

S.W.2d 734, 736 (Tex.1990) (citation omitted). Unless clearly contrary to the intention of the parties thereto, the courts should apply the plain grammatical meaning to the language of an agreement. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987) (citation omitted).

In this case, the record demonstrates that extensive negotiations occurred to resolve conflicts about the actual language that would be used in the agreement between the two parties. Notably, the parties apparently agreed to omit CTI's standard "take or pay" language from the contract.

Based primarily upon the objective interpretation of the unambiguous language of the contract, as well as partially upon the intent of the parties, the pertinent language in the agreement unambiguously demonstrates that the provision is a type of "satisfaction clause."[1] An objective analysis of this entire clause demonstrates that TriStar had the right to terminate the contract if certain conditions existed or were met.

Although the general intent and nature of this clause are clear, the record demonstrates a factual dispute as to the scope of the language in the agreement. Because of the ambiguity in scope of this clause, the actual limits of this clause are not subject to such a clear construction or interpretation. The parties vigorously dispute whether, pursuant to the clause set forth above, TriStar's cancellation of the contract constitutes a breach of the agreement by TriStar. TriStar argues that its cancellation was justified by TriStar's belief that CTI's financial condition was unsatisfactory.

When a provision in an agreement is ambiguous, the parties' conduct which indicates the parties' own construction of the provision may be considered to determine the parties' intent. *See Consolidated Engineering v. Southern Steel Co.*, 699 S.W.2d 188, 192–193 (Tex.1985) (citation omitted).[2] An agreement is ambiguous to the extent that its meaning is uncertain and doubtful or its terms are reasonably subject to more than one meaning. *Coker*, 650 S.W.2d at 393. To determine whether ambiguity exists in a contract, the court must consider the entire contract in light of the circumstances present at the time the contract was entered. *Id.* at 394. If an agreement contains an ambiguity, the granting of a motion for summary judgment is improper. *Id.*

The agreement between CTI and TriStar limits the "satisfaction clause" to the "quality of service or transmission." CTI argues that "quality" only refers to the provision of transmission services. TriStar responds that "quality of service" includes the financial condition of CTI and the "assurance of future performance from CTI." Based upon the requirement that all of the words and provisions in an agreement are to be given effect, this Court must construe the term "service" more broadly than, and distinctly from, the word "transmission." Therefore, from an objective and reasonable interpretation of this clause, in light of the use of the disjunctive connector "or" between these two terms, this Court holds that the term "service" is broader and at least partially distinct from the term "transmission" in the agreement. Because the interpretation of the term "service" has created an ambiguity in the

---

1. The Plaintiff has affirmatively stated in a responsive pleading that the agreement between CTI and Tri–Star "does not contain the word 'satisfaction' or 'dissatisfaction.'" *See* Plaintiff CTI's *Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment,* filed March 9, 1992. However, the clause quoted in this opinion contains the word "dissatisfaction" twice, as well as the clear implication that the language is a "satisfaction clause." In its motion for summary judgment, Plaintiff quoted this same entire passage in which the word

"dissatisfaction" is used twice. Plaintiff's counsel is warned that such clearly erroneous statements should be avoided.

2. Although the contract did not specify the applicable law, the Texas court held that Texas law would apply because the party argued it was entitled to recovery under Texas law and because the party did not object until after the jury verdict was returned. *Consolidated Engineering*, 699 S.W.2d at 193.

language of the agreement, summary judgment is not proper.

"Service" has rather broad possible meanings when used in contracts.[3] Reasonably and objectively, one party could understand "quality of service" to include the financial condition of the party providing the service. Based upon the pleadings and record, the Court is of the opinion that the financial condition of CTI may be encompassed, in certain situations, within the "quality of service" language. For example, if one party knew that the other party to the contract was going to have all of its assets seized in one month, then the first party could reasonably conclude that the financial condition would affect the "quality of service" of the other party. The parties may contest this issue at trial. However, the more crucial issue is whether the financial condition of CTI justified TriStar's termination of the agreement.

A leading treatise on the law of contracts has explained such clauses:

> The express words may be so clear as to show that the agreed condition is the personal satisfaction or dissatisfaction of the contractor, or that it is otherwise. Again, the question may be determined by the character of the performance contracted for and the nature of the tests by which it is customarily valued. If those tests are variable, involving artistic taste and personal fancy, there is strong reason to hold that the contractor's honestly held opinion is the condition. If those tests are scientific, mechanical, uniform, and objective, the condition is performance measured by those standards.

3A Corbin, *Corbin on Contracts*, § 648, at 107 (1960 ed.). In the present action, the tests for quality of service and financial condition do not involve artistic taste or personal fancy. Although not always as clear and objective as many scientific tests, the analysis of the financial condition of an operation involves the use of objective data and analyses. Therefore, the financial condition shall be measured by those objective standards, not by the subjective intent of the parties.

 Not limited solely by the language of the contract, TriStar's termination power is also limited by the law. Under Texas law, "[w]here the subject matter of a contract containing a "satisfaction" provision relates not to matters of personal taste, but to matters of commercial value or mechanical fitness, the party must act in good faith and must be honestly dissatisfied." *See Cranetex, Inc. v. Precision Crane & Rigging*, 760 S.W.2d 298, 301–302 (Tex.App.—Texarkana, 1988 writ denied) (citation omitted). Discussing cases that address contracts which provide that performance shall be to the satisfaction of one of the parties to the contract, the Texas Supreme Court has stated that the judgment of such a party regarding the adequacy of performance will be upheld if made in good faith. *See Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 88 (Tex. 1976) (partially overruled on other grounds by *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989) (holding that the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof)). The Texas Supreme Court applies a reasonableness test to determine the propriety of a decision of a party to terminate a contract based upon a satisfaction clause. *See Black Lake Pipe Line*, 538 S.W.2d at 88. The standard is whether the performance would satisfy a reasonable person. *See Cranetex*, 760 S.W.2d at 302. Whether a party acted in good faith in exercising its termination power is a question of fact. *See Anahuac, Inc. v. Wilkes*, 622 S.W.2d 634, 637 (Tex.App.—Austin 1981, no writ).

---

**3.** *Black's Law Dictionary* defines "service" when used in contractual agreements as follows:

> Duty or labor to be rendered by one person to another, the former being bound to submit his will to the direction and control of the latter. The act of serving the labor performed or the duties required. *Occupation, condition,*

> *or status* of a servant, etc. Performance of labor for benefit of another, or at another's command; attendance of an inferior, hired helper, etc.

*Black's Law Dictionary* (5th ed. 1979) (emphasis added).

This Court finds that the record creates a fact dispute concerning the scope of the satisfaction clause in the agreement. If the financial condition of CTI is appropriately covered by this clause, then this Court further finds that a fact dispute exists concerning the propriety of TriStar's termination of the agreement. To give proper effect to the entire provision, this Court holds that the agreement required TriStar to notify CTI of the reason for the dissatisfaction. Further, TriStar was required to give CTI a reasonable time to reasonably remedy any such problem. Then, if the problem continued to create a reasonably unacceptable "quality of service," TriStar would have been able to properly exercise its right to terminate the agreement.

This Court does have some concerns as to the good faith of Defendant TriStar in its decision to terminate the contract. An interesting factor is the timing of the termination by Defendant TriStar. The termination apparently occurred within the final four months of the two-year agreement. This Court does have some concern as to the rationale of TriStar for not allowing the contract to terminate according to its own terms at the end of the two year period. Additionally, in the letter from TriStar to CTI, dated November 15, 1990, in which TriStar sought to that terminated the agreement, TriStar does imply that it was fully satisfied with CTI's service. TriStar's president wrote that TriStar's "experience with your [CTI's] operational support has been quite positive, but we are sure you can appreciate our situation and the necessity to protect our own interests."[4] In the same letter, TriStar's president also wrote:

> The cooperation of CTI is, therefore, crucial *so that CTI not only continues to provide the highest possible level of support and service* through the termination date (including the same response time on outages), but also makes arrangements to allow TriStar and its agents to move its equipment.

(emphasis added). This emphasized passage seems to imply that CTI had been and was providing the highest quality of support and service at the time of the letter. Further, this Court notes that the memorandum, dated October 30, 1990, from Paul Evenson to the directors of TriStar also stated that non-party AT & T would be able to provide the same services as CTI at a 20% decrease in cost to TriStar. Such a statement arguably creates the implications that TriStar's motivation to terminate the agreement was, at least in part, to save money.

For TriStar to prevail in this action, the following fact issues must be resolved in its favor:

(1) that CTI's financial condition was covered by the satisfaction clause;

(2) that TriStar gave fair notice to CTI of the alleged unsatisfactory condition;

(3) that CTI failed to resolve the problem within such a reasonable time as specified by TriStar.

(4) that the financial condition was and continued to be, under an objective standard, unsatisfactory;

(5) that the financial condition was such that TriStar could reasonably conclude that CTI would not be able to adequately fulfill its obligations until the end of the term of the contract; and,

For CTI to prevail, only one of the above factors need be resolved in CTI's favor.

 A non-breaching party may affirm a contract that has been breached by: (1) evidencing a conscious intent to do so; or (2) acting so as to induce the other party's detrimental reliance, thereby creating an estoppel situation. *See Consolidated Engineering Co. v. Southern Steel Co.*, 699 S.W.2d 188, 191 (Tex.1985) (citation omitted). In *Consolidated Engineering*, based upon the written correspondence between the parties and a sense of fairness, the Texas Supreme Court held that the non-breaching party, as a matter of law, did not affirm the contract. *Id.* at 191–192. Based upon the record, this Court cannot

---

4. CTI has pointed out this language in support of its position. *See Brief in Support of Plaintiff's* *Motion For Summary Judgment,* filed February 7, 1992, at 3.

find any affirmance by either party of the other's alleged breach of the agreement.

This cause is currently set for non-jury trial on Thursday, October 29, 1992. This setting is firm. If any settlement agreement is agreed to by the parties, the parties shall submit a joint pleading to that effect by 5 p.m. on Monday, October 19, 1992. If no settlement agreement is so filed, the parties shall file an amended and revised pretrial order in light of this Order by 5 p.m. on Monday, October 19, 1992.

IT IS ORDERED that Plaintiff CTI's Motion for Summary Judgment is hereby DENIED.