**Glenys M. SADOWSKI, Plaintiff,**

v.

**DELL COMPUTER CORPORATION, Defendant.**

**No. CIV.A.3:00 CV 2113 (CFD).**

United States District Court,
D. Connecticut.

June 23, 2003.

Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, Thomas G. Moukawsher & Walsh, Hartford, CT, for plaintiff.

Richard S. Order, Axinn, Veltrop & Harkrider, Hartford, CT, Christopher H. Hahn, Vinson & Elkins, LLP, Austin, TX, for defendant.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Glenys Sadowski ("Sadowski"), brought this action against the Dell Computer Corporation ("Dell") alleging breach of contract.[1] Pending are the defendant's Motion for Summary Judgment [doc. # 27] and the plaintiff's Cross Motion for Summary Judgment on the Issue of Liability [doc. # 32]. For the following reasons, both motions are DENIED.

### I.  Background[2]

This dispute arises out of Sadowski's employment at Dell in Texas. Sadowski was hired by Dell as a marketing manager in September of 1997. Through her employment, Sadowski participated in two

---

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

2. The following facts are taken from the parties' Local Rule 56(c) statements and undisputed unless indicated otherwise.

Dell stock option plans, known as the Incentive Agreement and the Direct Rewards Plan.[3] Both of the plans provided for gradual vesting over a number of years, but also provided that if Sadowski were terminated because of a disability, the stock options not yet vested under the plan would become immediately vested and exercisable. Both plans also granted Dell considerable discretion in deciding whether an employee was disabled and whether an employee was terminated because of a disability.[4]

On April 7, 1998 Sadowski took a leave of absence from Dell due to emotional and psychiatric problems. After the leave was extended several times, Sadowski was terminated on January 22, 1999. Sadowski claims that she was terminated because of a disability within the meaning of both the Incentive Agreement and the Direct Rewards Plan because, in the opinion of her doctor and of a doctor provided by Dell for an independent medical assessment, she was unable to return to her work due to severe depression and other mental health conditions. She also claims that Dell's disability insurer and the Social Security Administration both determined her to be disabled. She asserts that Dell's refusal to acknowledge her disability and that it was the reason for her discharge was in bad faith and that she is therefore entitled to the stock options under the plans.

Dell relies on the language in the plans indicating that the determination of whether an employee was "disabled" falls within its sole discretion and asserts that the reason for her termination was not disability based, but because of her absences from work. Dell also notes that a third-party medical review company, Physician Authorization Review, Inc. ("PAR"), evaluated Sadowski's medical records and determined that her condition did not constitute a "disability" as contemplated in the two stock option plans. As mentioned, both parties have moved for summary judgment.

After considering the applicable standard for summary judgment, ERISA preemption, and choice of law for both plans, the Court will address the merits of the motions.

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if

---

**3.** The "Incentive Agreement" was incorporated by reference into the "New Hire Plan" that included Sadowski on the start of her employment on Sept 9, 1997. The "Broad Based Stock Option Plan [the "BBO plan"]" was incorporated into the "Direct Rewards Plan" which Sadowski joined on Nov. 2, 1998.

**4.** The Incentive Agreement states that " 'Disability' shall have the meaning given it in the employment agreement" or, if there is no such agreement " 'Disability' shall mean a physical or mental impairment of sufficient severity that, in the opinion of the corporation," prevents the employee from continuing in his/her job duties. Similarly, the Direct Rewards plan defines "disability" as "a physical or mental impairment of sufficient severity that, in the opinion of the Company, the person is unable to continue performing the duties performed before such impairment ..."

the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

### III. Analysis

#### A. ERISA Preemption

Section 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA) provides that the ERISA provisions "shall supercede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). The United States Supreme Court has held that this clause is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Further, "the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life*, 481 U.S. at 47–48, 107 S.Ct. 1549 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Under § 514(a), state common law tort and contract actions involving claims for benefits due under an employee benefit plan are also preempted. *See id.*

In determining whether ERISA preemption applies in this case, the Court must consider two threshold matters: whether the plans at issue are subject to ERISA and whether Dell has waived ERISA preemption by not raising it. The Court need not address the first issue, because even if one or both of the plans at issue are ERISA plans, the Court finds that ERISA preemption has been waived. The Second Circuit recently joined four other circuits in holding that ERISA preemption is a waivable defense in a "benefits-due" action:

Four circuits, as well as numerous state courts, have concluded that the defense of ERISA preemption in a benefits-due action may be waived if not timely raised. *See, e.g., Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 448–49 (1st Cir.1995) (citing state and federal cases); *Dueringer v. Gen. Am. Life Ins. Co.*, 842 F.2d 127, 129–30 (5th Cir.1988); *Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986); *Rehabilitation Inst. of Pittsburgh v. Equitable Life Assurance Soc'y of the United States*, 131 F.R.D. 99, 101 (W.D.Pa. 1990), *aff'd without op.*, 937 F.2d 598 (3d Cir.1991). In *International Longshoremen's Association v. Davis*, the Supreme Court made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore

may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law. *See Davis,* 476 U.S. 380, 390 & n. 9, 398–99, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); *see also Wolf,* 71 F.3d at 448; *Gilchrist,* 803 F.2d at 1496–97. The circuits that have addressed the waiver issue have agreed that the converse of the *Davis* rule also holds: Where federal preemption affects only the choice of law, the defense may be waived if not timely raised. *See Wolf,* 71 F.3d at 448; *Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484, 1489 (8th Cir.1992); *HECI Exploration Co. v. Holloway (In re HECI Exploration Co.),* 862 F.2d 513, 521 & n. 13 (5th Cir.1988); *Dueringer,* 842 F.2d at 130; *Gilchrist,* 803 F.2d at 1497; *see also Mauldin v. WorldCom, Inc.,* 263 F.3d 1205, 1211 (10th Cir.2001) (declining to decide whether ERISA or state contract law governs dispute because neither party briefed issue); *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1212 (11th Cir.1999) (stating that ERISA preemption can constitute an affirmative defense to certain state law claims). We join our sister circuits in reaching the same conclusion.

ERISA's jurisdictional provision governing benefits-due actions provides concurrent jurisdiction in state and federal district courts, see 29 U.S.C. S 1132(a)(1)(B), (e)(1), and thus ERISA prescribes the choice of law, not jurisdiction. As a result, we find that ERISA preemption in a benefits-due action is a waivable defense.

*Saks v. Franklin Covey Co.,* 316 F.3d 337, 349 (2d Cir.2003).[5] Here, because Dell has not asserted that Sadowski's claims are preempted by ERISA, that defense has been waived, and the Court will apply state common law to Sadowski's claims.

### B. Choice of Law

■ As a threshold matter, the Court must first determine which state's laws apply to the two stock option plans. Pursuant to *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply the choice of law provisions of its host state. *See Schwimmer v. Allstate Ins. Co.,* 176 F.3d 648, 650 (2d Cir.1999) ("Federal courts exercising diversity jurisdiction must apply the choice of the forum state … to determine which state's substantive law applies."); *GNOC, Corp. v. Endico,* 876 F.2d 1076 (2d Cir.1989) ("In a diversity action a federal court must apply the substantive law of the state in which it sits."). Connecticut follows the Restatement (Second) of Conflict of Laws, which generally enforces choice of law provisions in written agreements, as long as there is a substantial relationship with the designated state. *See Elgar v. Elgar,* 238 Conn. 839, 679 A.2d 937 (1996). The Direct Rewards Plan provides for the application of Delaware law. As Delaware is Dell's state of incorporation, there is such a "substantial relationship." In addition, the parties agree to the application of Delaware law.

■ With regard to the Incentive Agreement, which does not have a choice of law provision, Connecticut courts follow the "most significant relationship" approach of the Restatement:

The starting point under the "most significant relationship" approach is § 188 of the Restatement (Second) of the Conflict of Laws, which provides in relevant part: "(1) The rights and duties of the

---

5. The Court also noted that "other types of actions under ERISA are subject to the exclusive jurisdiction of the federal courts; thus our analysis here is limited to ERISA preemption of benefits-due actions." *Saks,* 316 F.3d at 350.

parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."

*Interface Flooring Sys., Inc. v. Aetna Casualty and Surety Co.,* 261 Conn. 601, 608–09, 804 A.2d 201 (2002). Here, Texas appears to be the jurisdiction with the most significant contacts, as the contract for Sadowski's participation in the Incentive Agreement was both negotiated in and performed in that state. Also, the parties agree that Texas law should apply.

Thus, based on the application of Connecticut's choice of law rules, this Court will apply Delaware law to the Direct Rewards Plan and Texas law to the Incentive Agreement.

### C. Incentive Agreement

Dell asserts that the plain language of the Incentive Agreement gave it absolute discretion to determine whether Sadowski's disability was the reason for her termination. There are two documents which refer to the relevant language: what has been referred to as the "New Hire Agreement" and the Incentive Agreement documents. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. # 28], Ex. A. The New Hire Agreement contains the following language: "If your Employment is terminated by reason of your permanent Disability (as defined in Section 11.6 of the [Incentive] Plan), then any portion of this Option that has not vested . . . will become fully vested and immediately exercisable." Def.'s Mem. In Supp. of Mot. for Summ. J., at 6. The Incentive Agreement, in turn states that " 'Disability' shall mean a physical or mental impairment of sufficient severity that, *in the opinion of the Corporation,* the [employee] is unable to continue" to work and "that impairment or condition

*is cited by the Corporation as the reason for the termination of the [employee's] employment." Id.* (emphasis added). Based on the italicized language, Dell asserts that it is entitled to summary judgment because 1) Dell concluded that Sadowski did not have a permanent disability that prevented her from working and 2) Dell did not cite a permanent disability as the reason for Sadowski's termination.

In her memorandum in opposition to Dell's motion for summary judgment and in support of her own cross-motion for summary judgment, Sadowski asserts she was permanently disabled and that a number of Dell's own documents recognized her disability as the reason leading to her termination. She also notes that, in addition to her own physician, a physician that Sadowski selected from a list provided by Dell found her to be permanently disabled. She claims that Dell's refusal to conclude that her termination was because of a permanent disability was an abuse of discretion made in order to avoid its obligations to her under the Incentive Agreement.

Dell's response is that Texas law does not impose a good faith obligation on the exercise of its discretion in this context. *See Stinger v. Stewart & Stevenson Services, Inc.,* 830 S.W.2d 715, 720 (Tex.App. 1992). Dell also asserts that it is immaterial whether the plaintiff was actually permanently disabled since the operative language in the contract gives Dell "sole and absolute" discretion to make that determination. It claims that even if that determination was wrong, it does not amount to a breach of contract.

■ The Restatement (Second) of Contracts, § 205 states that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." However, this general obligation of good faith has not been adopted in Texas as to employment con-

tracts. *See City of Midland v. O'Bryant* 18 S.W.3d 209, 215 (Tex.2000) ("We have specifically rejected the implication of a general duty of good faith and fair dealing in all contracts.") (citations and internal quotation marks omitted). While Texas law does not impose a "general obligation" of good faith and fair dealing in employment contracts, Sadowski's claim under the Incentive Agreement is not reliant upon such a general implied obligation of good faith. Rather, her claim focuses on a specific contractual term which provides that her stock options are to vest if she is terminated because of a disability. The question for the Court is not whether Dell owes Sadowski a general obligation of general good faith in the execution of the contract, but rather what are the boundaries of the discretion afforded to Dell under the agreement in determining whether Sadowski was terminated because of a disability.

■ It is a well-settled principle of contract law-even in Texas-that every provision of the contract should be given some meaning. *See Larsen v. Carlene Langford & Assoc.,* 41 S.W.3d 245, 252 (Tex.Ct.App. 2001) ("Courts are to assume that the parties intended every contractual provision to have some meaning.... In absence of evidence to the contrary, words and phrases in a written contract will be accorded the ordinary, popular, and commonly-accepted meaning."); *TM Productions, Inc. v. Nichols,* 542 S.W.2d 704, 708 (Tex.Civ. App.1976) ("A presumption exists that every provision of a contract was included for a particular purpose ... [a] court must presume that the parties intended every word to have meaning, effect and purpose unless it is plainly repugnant to the meaning of the overall contract."). If Dell is correct that the discretion granted to it under the contract to designate the reason for Sadowski's termination is absolute, limitless, and creates no obligation to Sadowski, then the provision providing for early vesting in the event of a discharge due to a disability has no meaning Whether the stock options vested under the Incentive Agreement would not actually bear any relation to whether the employee's termination was actually due to a disability, as contemplated by the plain language of the contract.

Essentially, Dell urges this Court to hold that the provision in the Agreement providing that options would vest in the event of a termination because of a disability was an "illusory promise" that cannot be enforced against Dell. "One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature and extent of his performance. This unlimited choice in effect destroys the promise and makes it illusory." Williston on Contracts, § 4:24 (4th ed.). However, where possible, courts will imply a limited obligation of good faith or reasonableness in the exercise of such discretion to avoid an illusory promise: "Often, however, the imposition of a good faith or reasonable standard by which the promisor's performance is to be measured will prevent his promise, though it otherwise appears to reserve to him absolute discretion, from being in fact illusory." *Id.*

Applying the principal that every provision in a contract be given some meaning, the Supreme Court of Georgia has held that a good faith requirement attaches to one party's exercise of its absolute discretion. *See Newport Timber Corp. v. Floyd,* 247 Ga. 535, 277 S.E.2d 646, 650 (1981). The litigants in *Newport* were parties to a timber harvesting contract. *See id.* at 649. The contract provided that the two-year duration of the agreement would automatically be extended by the number of days that inclement weather prevented "prac-

tical timber harvesting operations." *Id.* at 650. The contract also provided that the plaintiff "shall have the *uncontrolled and absolute discretion* to determine when, as, and if weather conditions are such as to prevent 'practical timber harvesting operations' hereunder." *Id.* (emphasis added). The Court rejected the plaintiff's contention that this provision provided it with the authority to extend the contract regardless of the actual weather conditions:

> We feel that it may be fairly implied from [the contract] as a whole that the discretion given to [plaintiff] *was to be exercised in a sound and honest manner and in good faith,* as otherwise the references to weather conditions and practical timber harvesting would be rendered meaningless.

*Id.* (emphasis added). Similarly, if the Court does not infer an implied agreement that Dell use the discretion afforded to it under the contract in "a sound and honest manner and in good faith," then the references to a termination "by reason of permanent Disability" would be rendered meaningless.

██ Consistent with the reasoning in *Newport,* Texas courts have required good faith in situations where one party is given "an unlimited right to decide later the nature and extent" of its performance. For example, in *Communications Transmission, Inc. v. TriStar Communications, Inc.,* 798 F.Supp. 406 (W.D.Tex.1992), the disputed contract provided that "[the defendant] may cancel service, at any time, should quality of service or transmission become unacceptable *(based on [the defendant's] sole and exclusive determination.)*" 798 F.Supp. at 407 (emphasis added). The Court held that, while the clear language of the contract gave the defendant the discretion to terminate the contract if it judged the other party's performance to be unacceptable, "The Texas Supreme Court

applies a reasonableness test to determine the propriety of a decision of a party to terminate a contract based on a satisfaction clause. The standard is whether the performance would satisfy a reasonable person. Whether a party has acted in good faith in exercising its termination power is a question of fact." *Id.* at 409 (citations omitted). *See also Cotten v. Deasey,* 766 S.W.2d 874, 878 (Tex.App. 1989) ("Whether a party's dissatisfaction about the conditions was feigned or in good faith is a fact issue. The decision must have been made in good faith."); *Golden State Mutual Life Ins. Co. v. Kelley,* 380 S.W.2d 139, 141 (Tex.Civ.App. 1964) ("The company must, in fact, have been of the opinion that the [condition had not been met] or a cancellation on that ground would be tainted with fraud. The determination must have been made in good faith.").

██ For the preceding reasons, the Court concludes that the discretion afforded to Dell under the contract was required to be exercised in good faith. As such, there are genuine issues of material fact as to whether Dell's determination that Sadowski's discharge was not because of a permanent disability was made in good faith, which preclude summary judgment for either party.

### D. Direct Rewards Plan

The Direct Rewards Plan, like the Incentive Agreement, grants Dell considerable latitude in determining whether Sadowski was "permanently disabled." The language triggering Dell's obligation to provide the options to Sadowski, like the Incentive Agreement, requires that the "impairment or condition [be] cited by the Company as the reason for termination." Dell argues that, whether Sadowski was permanently disabled or not, it did not "cite" her disability as the reason for her

discharge. Sadowski claims that Dell abused the discretion afforded to it under the contract in order to avoid its obligation under the agreement.

■ Unlike Texas, Delaware law does impose a general obligation of good faith and fair dealing in all contracts, including employment agreements. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *E.I. DuPont de Nemours and Co. v. Pressman,* 679 A.2d 436, 442 (Del.1996). This obligation is construed narrowly, however: "[The court] note[s] that cases invoking the implied covenant of good faith and fair dealing should be rare and fact-intensive. Only where issues of compelling fairness arise will this Court embrace good faith and fair dealing and imply terms in an agreement." *The Continental Ins. Co. v. Rutledge & Co.,* 750 A.2d 1219, 1234 (Del. Ch.2000). Here, there are "issues of compelling fairness" and questions of fact regarding the justified expectations of the parties that produce an implied obligation of good faith.

Dell cites *DeBakey Corp. v. Raytheon Service Co.,* No. 14947, 2000 WL 1273317, at *18 (Aug. 25, 2000 Del.Ch.) for the proposition that where a contract affords a party "sole discretion" under a contract, that party may exercise its discretion to the other party's detriment. However, discretion does not remove the obligation of good faith and fair dealing. In *DeBakey,* the Court denied the plaintiffs' claim of breach of contract based on good faith and fair dealing not because such an obligation did not exist, but because it found no factual basis for the plaintiffs' contentions that bad faith had been exercised. *See id.* at *18 (finding that although the plaintiffs had argued that the defendant had violated its obligation of good faith and fair dealing "by secretly deciding to pull the plug [on their joint venture]" the defendant "did not secretly decide to pull the plug . . .").

■ Finally, apart from the general obligation of good faith and fair dealing, Dell's reading of the Direct Rewards Plan raises the same problems discussed above regarding the Incentive Agreement: it would render the early vesting clause after a termination for disability meaningless and it would make that part of Dell's obligations an unenforceable illusory promise. In Delaware, as in Texas, every provision in a contract should interpreted to have some meaning. *See E.I. du Pont de Nemours and Co. v. Shell Oil Co.,* 498 A.2d 1108, 1114 (Del.1985) ("To [accept that interpretation] would be to violate the cardinal rule of contract construction that, where possible, a court should give effect to all contract provisions.").

■ As there are genuine issues of material fact as to whether Dell terminated Sadowski because of her disability, summary judgment is not appropriate for either party under the Direct Rewards Plan also.

For the preceding reasons, the defendant's Motion for Summary Judgment [Doc. # 27] is DENIED and the plaintiff's Cross Motion for Summary Judgment on the Issue of Liability [Doc. # 32] is also DENIED.