HOSE PRO CONNECTORS, INC., John E. Rutherford, and Mrs. J.E. Rutherford, Appellants,

v.

PARKER HANNIFIN CORPORATION, Appellee.

No. C14–93–00915–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 27, 1994.

Timothy A. Tyler, Houston, for appellant.

Bernard Lilse Mathews, III, Jack A. Adams, Houston, for appellee.

Before ROBERTSON, CANNON and LEE, JJ.

## OPINION

ROBERTSON, Justice.

This is a suit on a sworn account. Appellee, Parker Hannifin Corporation (Parker Hannifin), filed suit against appellant, Hose Pro Connectors, Inc. (Hose Pro), to recover $33,150.51 owed on the account. The case was tried to the court which found Hose Pro liable for $25,000.00. The court also found appellants, Mr. and Mrs. John Rutherford (the Rutherfords), and Dan Stokes, joint and severally liable as guarantors of Hose Pro. Raising six points of error, only Hose Pro and the Rutherfords appeal from the court's judgment. We affirm.

Parker Hannifin supplies hydraulic fittings and hoses for a number of industrial applications. As a full-line distributor, Hose Pro had an account with Parker Hannifin through which it bought Parker Hannifin products at a discount for sale in the open market. In 1986, Hose Pro experienced problems due to a lack of sales. By October 1986, Parker Hannifin cancelled Hose Pro as a distributor and demanded payment of the $65,572.82 balance due on the account. Just prior to the cancellation, Parker Hannifin offered Hose Pro an opportunity to return inventory to offset the outstanding balance. Parker Hannifin's Assistant Corporate Credit Manager, William Dei, discussed the procedure for such a return with Hose Pro's President and General Manager, Dan Stokes.

On October 28, 1986, Parker Hannifin received a typed letter from "Danny Stokes," asking one of Parker Hannifin's product divisions to review the "list of Parker fittings" and "to advise of the value and items allowed to be returned." The date on the letter was handwritten and the letter unsigned. Stokes testified that he left Hose Pro in September 1986 and denied any knowledge of the letter. The list was forwarded to various Parker Hannifin product divisions so that they could determine the items acceptable for return. Each division then issued an Authorization For Return (AFR), identifying the items acceptable for return, unit price, quantity, and extension amount, i.e., quantity multiplied by unit price. The AFRs also stated the restocking or handling charge.

In January 1987, after conducting its own inventory of almost 17,000 items, Hose Pro sent two shipments of returns, containing tube fittings, hose products and parflex. An AFR and packing list accompanied each shipment. The appropriate product divisions in-

spected the returns and prepared an inspection report. The divisions found discrepancies in Hose Pro's packing lists. Some items were listed as shipped, but were not received. In addition, many items were received in damaged, dirty, or obsolete condition. Some returned items were not even Parker Hannifin products, but were items purchased by Hose Pro from competitors. Shortly after the inventory was returned, Hose Pro went out of business.

In April and September of 1987, Parker Hannifin sent credit memoranda to Hose Pro notifying it of the amounts credited to its account. In addition to listing the quantity of items accepted, unit price, and extension amount, the memoranda identified the items rejected and the reasons for their rejection. The memoranda were sent to Hose Pro's last known corporate address, which according to majority shareholder, John Rutherford, was correct. However, both Rutherford and Stokes denied receiving the memoranda or any other communication after the shipment of the returns. After computing the net credits from the three product divisions, Parker Hannifin determined that the balance on the account was $33,150.51. Parker Hannifin attempted unsuccessfully to contact Rutherford about the rejected items in its possession. Parker Hannifin eventually scrapped the rejected items some nine months after they were received.

On January 29, 1988, Parker Hannifin filed suit to collect the $33,150.51 balance due on the account. As proof of the debt, Parker Hannifin attached the account invoices, credit memoranda, and affidavit of William Dei to their Original Petition. Appellants answered with a verified denial. On May 14, 1993, after a one-day trial, the court found in favor of Parker Hannifin. On June 1, 1993, the court entered judgment, awarding Parker Hannifin $25,000.00 together with pre-judgment interest and $8,333.00 in attorney's fees. The court also awarded Parker Hanni-

fin costs and post-judgment interest. After their motion for new trial was overruled, appellants perfected this appeal. Findings of fact and conclusions of law were requested, but were not filed with this court.

In points of error one, two, and four, appellants complain that the trial court erred in finding that "the merchandise was unsaleable and not accepted" and in finding that appellants were indebted to Parker Hannifin because there was "no notice of non-conformity, rejection, or other disposition of the goods." In conjunction with points one, two and four, appellants complain in their third point of error that the court applied the wrong law to the facts.

■ Citing various sections of Uniform Commercial Code (UCC), appellants argue that Parker Hannifin is barred from recovery because it failed to give notice of its rejection of some of the returned items.[1] Appellants' argument is without merit. The UCC has no application to the facts of this case. Parker Hannifin did not foreclose on collateral that was the subject of a security interest nor was it seeking rescission of a contract for the sale of defective goods. *See, e.g., Tanenbaum v. Economic Lab. Inc.*, 628 S.W.2d 769, 771–72 (Tex.1982); *see also, e.g., Bowen v. Young*, 507 S.W.2d 600, 603 (Tex.App.—El Paso 1974, no writ). Rather, Parker Hannifin was merely seeking collection of a debt. With Parker Hannifin's permission, appellants attempted to satisfy that debt by returning previously purchased inventory.[2]

The notice issue is relevant to this lawsuit only insofar as it relates to whether appellants were entitled to a credit for the rejected items that were scrapped by Parker Hannifin. In that vein, appellants cannot complain because the trial court determined that appellants were entitled to a credit for the rejected items. Appellants sued for $33,150.51, but the trial court awarded only $25,000.00. According to William Dei, the value

---

1. Appellants cite Tex Bus. & Com.Code Ann. §§ 2.605, 2.606, 2.607, 2.711, 9.504, 9.505 (Vernon 1991 & 1994).

2. Appellants also argue that if the UCC is inapplicable, the parties' conduct constituted a voluntary mutual rescission of the original contract of

sale. *See Marsh v. Orville Carr Assoc., Inc.*, 433 S.W.2d 928, 931–33 (Tex.App.—San Antonio 1968, writ ref'd n.r.e.). Appellants did not advance this theory by pleading or argument below and it is therefore waived. *See Isbell v. Williams*, 738 S.W.2d 20, 25 (Tex.App.—Texarkana 1987, writ ref'd n.r.e.).

of the rejected items in a saleable condition would have been $8,620.90. Thus, the court awarded appellants an additional credit for the rejected items and appellants cannot complain about a lack of notice. We hold that the trial court properly applied the law to the facts. We overrule appellants' points of error one through four.

In their fifth and sixth points of error, appellants attack the legal and factual sufficiency of the evidence.

The standard of review for the legal and factual sufficiency of the evidence is well-established. When both legal and factual sufficiency points are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the trial court's findings. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). That review requires us to consider only the evidence and inferences that tend to support the trial court's findings and to disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988). When there is more than a scintilla of evidence, we may not overturn the trial court's findings on legal sufficiency grounds. *Id.* If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in support of, and contrary to, the challenged findings. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The trial court's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

There was no dispute about the initial $65,872.82 balance due on the account. Parker Hannifin claimed by sworn account that a portion of that balance remained unpaid. Appellants claimed by verified denial that they satisfied the account balance in full by returning inventory. Once a defendant in a suit on a sworn account files a verified denial as required by Tex.R.Civ.P. 185, the evidentiary effect of the itemized account is destroyed and the plaintiff is forced to prove its case. *Keaton v. R. Dakin & Co.*, 716 S.W.2d 726, 727 (Tex.App.—Corpus Christi 1986, no writ) (citing *Rizk v. Financial Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex.1979)). The essential elements of an action on an account are (1) that there was a sale and delivery of the merchandise; (2) that the amount of the account is just, that is, that the prices are charged in accordance with an agreement or in the absence of an agreement, they are the usual, customary and reasonable prices for that merchandise; and (3) the amount is unpaid. *Keaton*, 716 S.W.2d at 728.

Here, the first two elements pertaining to the sale, delivery, and price of the merchandise purchased on the account were not disputed. Instead, the parties argued about whether there was an amount unpaid, or stated another way, whether credits were properly applied against the account. In support of their positions, the parties offered evidence of the value of the inventory returned for credit. Thus, the issue before the court was whether the account balance had been paid based on the value of the returned inventory. There was conflicting evidence on that issue.

As we noted, Parker Hannifin's primary witness, William Dei, testified by deposition that many of the returned items were not in saleable condition or were not Parker Hannifin products and that after applying the appropriate credits, an outstanding balance remained on the account. On the other hand, Rutherford, Stokes, and John Fox, all testified for appellants that the returned items were in a saleable condition and that the value of those items was in excess of the balance owed. However, neither Rutherford nor Stokes prepared the inventory of returned items. Rutherford delegated that task to John Fox and never personally verified the accuracy of the inventory. Stokes was in charge of Hose Pro's inventory during his tenure with the company, but left Hose Pro before it conducted the inventory of the returned items.

Fox was the only Hose Pro witness who personally inspected the returned inventory

and prepared the packing lists for Hose Pro. Fox and Rutherford refused the offer of two Parker Hannifin employees to assist in that process. Fox headed another company located in the Hose Pro facility. He never dealt directly with Parker Hannifin products until his company moved to that facility in March 1986, and therefore was only "generically familiar" with Parker Hannifin products through his experience in the hose fitting business. Nevertheless, Fox concluded that the returned inventory belonged to Parker Hannifin, that it was in saleable condition, and that its value, based on calculations authorized by Parker Hannifin, covered the balance owed.

However, on cross-examination, Fox conceded that his conclusion about the value of the returned inventory was based on a lower handling charge which he claimed was authorized by a Parker Hannifin employee and on the assumption that all of the items were acceptable. However, William Dei testified that the AFRs dictated the terms for the return of the inventory, including the assessment of a handling charge. Dei also testified that Hose Pro was not obligated to accept any returned items, let alone those returned items not identified in the AFRs. Likewise, Dan Stokes believed that Dei was willing to accept the inventory in exchange for the debt "at least partially."

Fox also admitted that the packing list stated the list price of some items rather than the distributor discount price, though he acknowledged that he did not intend to receive credit based on the list price. Fox further admitted that some items were counted in open boxes and were identified merely by the part number listed on the box. Although not familiar with Parker Hannifin products, Fox stated that it took him a little more than a week to inventory the 17,000 items. Paul Walker, a territory manager for Parker Hannifin, testified that it would take several weeks to count, inspect, and ship that many items.

The trial judge as the sole trier of fact was free to resolve any conflicts or inconsistencies in the evidence. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). According to William Dei's testimony, appellants' account balance would have been $26,945.99, after applying all credits including a credit for the rejected items. Paul Walker testified that if appellants were given a total credit, their account balance would have been $23,318.36. The Dei affidavit attached to the Original Petition states that the outstanding balance on the account is $33,150.51, not counting approximately $8,000.00 in credit for rejected items. The trial court awarded $25,000.00 to Parker Hannifin.

We find that the evidence is sufficient to support the trial court's judgment. We overrule appellants' fifth and sixth points of error and affirm the judgment of the trial court.